IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OSCAR OCHOA § | | |
|     Plaintiff, § | § | CIVIL ACTION NO. |
| § | | |
| v. § | § | 4:23-cv-03355 |
| § | | |
| HARRIS COUNTY SHERIFF DEPUTIES § | | |
| AND/OR DETENTION OFFICERS § | | |
| R. MARRON, DIMITRI JOHNSON, § | § | JURY TRIAL |
| GOMEZ, BREZIK, and § | § | DEMANDED |
| HARRIS COUNTY § | | |
|     Defendants. § | | |

**PLAINTIFF'S RESPONSE TO DEFENDANT, HARRIS COUNTY'S MOTION TO DISMISS**

COMES NOW, Oscar Ochoa, Plaintiff is the above-styled and numbered cause and files this Response to Defendant Harris County's Motion to Dismiss. In support of this claim, Plaintiff would show as follows:

**I.**

**PLAINTIFF HAS PLED FACTS TO IMPLICATE *MONELL* LIABILITY AGAINST THE HARRIS COUNTY; THEREFORE, DEFENDANT'S MOTION TO DISMISS SHOULD BE DENIED**

The pleading stage is not the point at which plaintiffs must establish the level of proof necessary to prevail. *See Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977). Indeed, a "strong framework of policy considerations . . . militate[s] against granting motions to dismiss for failure to state a claim[.]" *Kaiser Aluminum & Chem.*

*Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). Thus, in the Fifth Circuit, motions to dismiss "are viewed with disfavor and are rarely granted." *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 231 (5th Cir. 2009); *see also Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). A complaint will not be dismissed merely because it contains an imperfect statement of the legal theory supporting the claim asserted. *Johnson v. City of Shelby*, 135 S. Ct. 346, 346 (2014). Federal pleading rules simply call for "a short and plain statement of the claim showing that the pleading is entitled to relief." *Id.* (*citing* Fed. R. Civ. P. 8(a)(2)).

The ultimate question in a motion to dismiss is whether the complaint states a valid claim when it is viewed in the light most favorable to the plaintiff. *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 312 (5th Cir. 2002). Two primary principles guide plausibility analysis: Courts must "liberally construe the complaint in favor of the plaintiff" and must "accept all well-pleaded factual allegations as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Importantly, courts do not evaluate the merits of the allegation but only consider whether plaintiff has adequately pled a legally cognizable claim. *United States ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). A pleading simply needs to provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009). The Plaintiffs have met that burden.

**Pleading standards for the Plaintiffs' municipal liability claim.**

The City is liable "if it . . . causes a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Ordinarily, official municipal policies are contained in duly promulgated policy statements, ordinances, or regulations. *Webster v. City of Hous.*, 735 F.2d 838, 842 (5th Cir. 1984). But a policy may also be evidenced by a custom, even if such custom has not received formal approval. *Id.* In fact, even a facially innocuous policy will support liability if it were promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result. *Piotrowsky v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001) (*quoting Bd. of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 407, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997)). Therefore, municipal liability under Section 1983 requires proof of three elements: (1) an official policy; (2) promulgated by a final policymaker; and (3) that is a moving force behind the violation of the constitutional right. *See Monell*, 436 U.S. at 694.

In the municipal liability context, "only minimal factual allegations should be required at the motion to dismiss stage." *Thomas v. City of Galveston, Tex.*, 800 F. Supp. 2d 826, 842–43 (S.D. Tex. 2011); *see also Speck v. Wiginton*, 606 F. App'x 733, 735–36 (5th Cir. 2015) (*per curiam*). That is because it is "exceedingly rare that a plaintiff

will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery." *Thomas*, 800 F. Supp. 2d at 842; *see also Sanchez v. Gomez*, 283 F. Supp. 3d 524, 532 (W.D. Tex. 2017). While a municipal liability complaint must state more than "boilerplate allegations," stating a claim does not "require[e] plaintiffs to plead specific factual details to which they do not have access before discovery, on the other." *Thomas*, 800 F. Supp. 2d at 842; *see also Schaefer v. Whitted*, 121 F. Supp. 3d 701, 718 (W.D. Tex. 2015) (agreeing with the pleading standard articulated in *Thomas*).

Thus, unlike claims against officers, a municipal liability claim satisfies the federal pleading standard if it describes, for instance: "(1) past incidents of misconduct by the defendant to others; (2) multiple harms that occurred to the plaintiff himself; (3) the involvement of multiple officials in the misconduct; (4) the specific topic of the challenged policy or training inadequacy," or (5) "misconduct that occurred in the open…together with any additional elaboration possible." *Flanagan v. City of Dall., Tex.*, 48 F. Supp. 3d 941, 947 (N.D. Tex. 2014). "Those types of details, together with any additional elaboration possible, help to (1) 'satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests;' and (2) 'permit the court to infer more than the mere possibility of misconduct.'" *Id.* Finding a complaint insufficient even when it describes the specific topic of the targeted policy, procedures, or failures in supervision, training, and discipline—and elaborates to

the extent possible without discovery— imposes a different, impermissibly high standard of the sort this jurisdiction has rejected. *See, e.g., Wright v. City of Dallas*, No. 3:09–CV–1923–B, 2010 WL 3290995, at *3 (N.D. Tex. Jul. 19, 2010), *report & recommend. adopted*, 2010 WL 3291816 (Aug. 19, 2010).

Furthermore, where a complaint does not "identify which training policy and/or procedures were inadequate or how this alleged inadequacy directly caused" the alleged violation in a municipal liability claim: [t]he failure of specificity is no fault of Plaintiff's, . . . because he has not yet had the benefit of discovery. Plaintiff is bound by Rule 11 to allege only those facts for which he has or will likely have evidentiary support.

As the Fifth Circuit explained in *Schultea v. Wood*, a plaintiff is not required to plead facts "peculiarly within the knowledge of defendants." 47 F.3d 1427, 1432 (5th Cir. 1995); *see also Williams v. City of Denton*, Tex., No. 4:17-CV-00811, 2019 WL 438403, at *10 (E.D. Tex. Jan. 10, 2019), *report & recommend. adopted*, 2019 WL 430913 (E.D. Tex. Feb. 4, 2019) (*citations omitted*) *quoting Schultea,* 47 F.3d at 1432and *Hubert*, 335 F. App'x at 472).

In *Williams*, the court found the complaint showed the plaintiff "suffered harm at the hands of the City's employees," the allegations lacked "the requisite specificity regarding how such policies, customs, or practices were promulgated and fail[ed] to specify any particular training deficiency or how any such deficiency contributed" to the

harm suffered. 2019 WL 438403 at *9. However, "[t]he facts omitted here are squarely within that category" of facts peculiarly within the knowledge of defendants. *Id.* at *10. Thus, rather than dismiss the claim, the court "allow[ed] discovery limited to the issue of the City's policies, practices, or customs regarding excessive force and police officer training regarding the use of excessive force," waiting to "decide the issue of the City's liability once that discovery is complete." *Id.*

Therefore, to the extent the Plaintiffs' Complaint is not yet able to identify information peculiarly within the knowledge of the County "[t]he failure of specificity is no fault of" the Plaintiffs, "because [they] have not yet had the benefit of discovery." *Id.*

Furthermore, Constitutional challenges by pretrial detainees may also be brought under a conditions of confinement theory. Salcido v. Harris Cty., 2018 U.S. Dist. LEXIS 169034 *125 (S.D. Tex. 2018). A conditions of confinement theory would be based on "Harris County's policies, customs, and practices" such that it is an attack on the "general conditions, practices, rules, or restrictions of pretrial confinement." Id., *125. A plaintiff challenging jail conditions needs only demonstrate a pervasive pattern of serious deficiencies in providing for his basic human needs. Id. (emphasis added). This pattern may include incidents preceding and succeeding Plaintiff's incident. *Infra*.

### Argument in support of Plaintiffs' municipal liability claim.

Plaintiff did allege "past incidents of misconduct by the defendant to others" in Plaintiff's Complaint at 29. Additionally, while not pled in the Complaint, the County is or has been on notice of a pattern of past incidents of misconduct or inadequate policies because Sheriff Gonzalez as well as Harris County Mayors and Sheriffs prior to Sheriff Gonzalez were made aware of the constitutional failures of the Harris County Jail beginning as early as 2009 when the Department of Criminal Justice began its investigation into the jail and making reports.[1]

The DOJ report found that "For security matters in particular, the Jail lacks: (1) a minimally adequate system for deterring excessive use of force, and (2) an adequate plan for managing a large and sometimes violent detainee population" (pg 14). The DOJ report also noted that "As a result of systemic deficiencies including a lack of appropriate policies and training, the Jail exposes detainees to harm or risk of harm from excessive use of force" and "When supervisors review use of force incidents, they do not have ready access to important evidence. Instead, they appear to rely excessively on officer statements to determine what happened during an incident" (pg. 15).

In reviewing excessive force, the DOJ noted "use of force occurs at the Jail without adequate review, and Jail data regarding use of force levels cannot be considered reliable. We believe that the incidents noted during our review may only

---

[1] Plaintiff asks the Court to take judicial notice of the Department of Justice report from June 4, 2009 ("DOJ Report").

reflect part of what is really occurring within the facility" (pg. 15). The DOJ further noted that "as a result of systemic deficiencies including a lack of appropriate policies and training, the Jail exposes detainees to harm or risk of harm from excessive use of force." *Id.*

In terms of reviewing excessive force the DOJ also found "Notably, when force was investigated by supervisors, it appears that the supervisors often determined that staff's use of force was appropriate without obtaining independent medical review or multiple witness statements." *Id.* The DOJ report also put Harris County on notice regarding overcrowding exacerbating the problems in the Jail. Specifically, it was noted "The Texas Jail Commission's decision to grant the County waivers to house approximately 2000 detainees more than the Jail's original design capacity is concerning on its face….. (1) the Jail's crowded conditions currently exacerbate many of the constitutional deficiencies identified in this letter; and (2) the Jail needs a more comprehensive, systemic approach to dealing with a large and growing Jail population." (pg. 17).

Despite the DOJ report being made in 2009, the same problems continue to persist. It was recently reported that "Back in September 2022, the Texas Commission on Jail Standards determined the Harris County Jail was violating statewide safety standards — a determination that's held true for more than a year now. Among the plethora of violations, commission found that the jail wasn't providing timely medical care and

8 | P a g e
Response to Defendant Harris County Motion to Dismiss

was struggling to maintain the state-mandated staffing ratio of one detention officer for every 48 persons held in the jail.(https://www.tcjs.state.tx.us/non-compliant-jails/)" [2]

The Houston Chronicle reviewed the growing use of force in the Harris County Jail and reviewing "the Harris County Sheriff's Office's self-reported violent incident report data from May of each year from 2020 through 2023. The records indicate that "use of force leading to bodily injury" increased by nearly 200 percent from 2020 to 2023, with 17 incidents in May 2020, 39 incidents in May 2021, 48 incidents in May 2022 and 50 incidents in May 2023. Assaults increased from 577 in May 2020 to 803 in May 2023—a 39 percent increase—over the same period."[3]

In addition to the DOJ report, the Texas Commission on Jail Standards, and Harris County's own self reporting- the Count was aware of a persistent or continued patter of constitutional violation through the grievances made by detainees through the kiosk located inside the jail and by the lawsuits filed against Harris County. Related case Cause No. 4:23-cv-02886, filed in the Southern District, represents 22 inmates who either died or suffered serious injuries while in the custody of Harris County from late 2021-mid 2023 and offers a plethora of examples of violations by Harris County. Similarly, on April 6, 2022, another detainee, Elton Spicer, was also the victim of an assault by Harris County detention officers and was caught on camera.

---

[2] https://www.houstonpublicmedia.org/articles/news/criminal-justice/2024/02/02/476187/state-officials-have-been-reducing-the-harris-county-jails-bed-c%E2%80%A6 .
[3] https://www.chron.com/news/houston-texas/article/harris-county-jail-texas-18208700.php

It is evident that Harris County had actual or constructive knowledge of the continued pattern, culture, and custom of constitutional violations at the Harris County Jail to include: violence, excessive force, inadequate medical care and denial of medical care. Plaintiff would seek leave of this Court to amend his pleadings to incorporate the paragraphs above into his complaint to clarify his causes of action and address Defendant Harris County's concerns regarding what they view as deficiencies in Plaintiff's pleadings.

> **Plaintiff has sufficiently identified the policies and training procedures that were the moving force behind the constitutional violation at this stage of the litigation.**

In the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery. *Thomas,* 800 F. Supp. 2d at 842-843, n. 1012. Accordingly, only minimal factual allegations should be required at the motion to dismiss stage. *Id*. Moreover, those allegations need not specifically state what the policy is, as the plaintiff will generally not have access to it but may be more general. *Id*. (*citing Hobart v. City of Stafford,* 2010 WL 3894112, at *5 (S.D.Tex. Sept. 29, 2010) (*Hobart I*) (Ellison, J.) ("even general facts which point to prior violations by [the police department] would allow the [plaintiffs] to survive the motion to dismiss phase").

Plaintiffs have sufficiently pleaded the municipal liability cause of action at this stage of the litigation. Plaintiffs have provided fair notice to the Defendant by alleging past incidents of misconduct to others, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy. *Id*. at 843-844 (*citations omitted*). Those types of details, or any other minimal elaboration a plaintiff can provide, help to "satisfy the requirement of providing not only `fair notice' of the nature of the claim, but also `grounds' on which the claim rests," *Twombly,* 550 U.S. at 555 n. 3, 127 S.Ct. 1955, and also to "permit the court to infer more than the mere possibility of misconduct." *Thomas*, 800 F. Supp. 2d at 844 (*citing Iqbal, 129 S.Ct. at 1950*). "This balance, requiring more than boilerplate allegations but not demanding specific facts that prove the existence of a policy, is in line with the approach of other courts post-*Iqbal*." *Id*. (*citations omitted*). "Where a plaintiff provides more than a boilerplate recitation of the grounds for municipal liability, and instead makes some additional allegation to put the municipality on fair notice of the grounds for which it is being sued, 'federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than to later.'" *Id*. at 844-845 (*citing Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit et al.,* 507 U.S. 163, 168-69, 113 S.Ct. 1160 (1993)).

**B. The Plaintiffs have sufficiently alleged that a policy, custom, or practice was the moving force behind the Fourth Amendment violation.**

It has been long recognized that municipalities are not immune from § 1983 liability and are susceptible to direct claims for monetary, injunctive, or declaratory relief by plaintiffs alleging a deprivation of constitutionally protected rights. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690–91 (1978). Plaintiffs must attribute the alleged constitutional deprivation directly to the municipality by demonstrating (1) an official policy or custom; of which (2) a policy maker can be charged with actual or constructive knowledge; and (3) the custom or policy was the "moving force" behind the alleged constitutional violation. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

At the pleading stage, plaintiffs may rely on minimal factual allegations, including but not limited to "the specific topic of the challenged policy or training inadequacy." *Thomas*, 800 F. Supp. 2d at 842-44; *see also Brown v. City of Hous.*, 297 F. Supp. 2d 748, 767 (S.D. Tex. 2017); *Sanchez*, 283 F. Supp. 2d at 532. In *Brown v. City of Houston*, for instance, the district court properly found municipal liability allegations sufficient where the plaintiff identified the District Attorney's office's "do whatever it takes" conviction culture as the policy or custom that was the "moving force" behind his constitutional injuries. 297 F. Supp. 3d at 766. And in *Flanagan v. City of Dallas*, alleging "a combination of statistics, past incidents, and statements by city officials" was

sufficient to state a *Monell* claim against the City of Dallas for policies that plaintiffs alleged were the moving force behind the excessive deadly force in question. *Sanchez*, 283 F. Supp. 3d at 536 (*citing Flanagan*, 48 F. Supp. 3d at 953).

Demonstrating the existence of an official policy through de facto custom or practice requires the plaintiff to allege facts demonstrating a "pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582. Here, the Plaintiffs have alleged a pattern of prior, similar incidents to show a custom or practice or policy violation.

Defendant's arguments that there are not enough incidents identified in the complaint to establish a custom or practice should be rejected. With the benefit of discovery, the Plaintiffs will be able to articulate the training failures with more specificity. Additionally, should the Court grant Plaintiff leave to amend his Complaint, Plaintiff has alleged in this response numerous other examples of incidents and related cases showing that Plaintiff's incident was not isolated. Furthermore, this policy of using excessive force, despite the written policy, without consequences, caused the injuries Plaintiff and numerous other victims. Therefore, the policy was the moving force behind the injury.

### C. The Plaintiffs have sufficiently alleged that the County failed to train, supervise or discipline officers.

It is well-settled that "a municipality's failure to train its police officers can without question give rise to § 1983 liability." *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 380 (1989). For the failure to train claim, the Plaintiffs must demonstrate that: (1) the training policy procedures were inadequate, (2) the City was deliberately indifferent in adopting its training policy, and (3) the inadequate training policy directly caused Kehyei's death. *Sanders-Burns*, 594 F.3d at 381 (*citing Baker v. Putnal,* 75 F.3d 190, 200 (5th Cir.1996) and *Pineda v. City of Houston,* 291 F.3d 325, 332 (5th Cir. 2002)).

A municipality can be liable for failure to train, or inadequate training, of its employees when the municipality's failure shows `a deliberate indifference to the rights of its inhabitants.'" *Id.* (*citing Farmer v. Brennan,* 511 U.S. 825, 840, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)). "Deliberate indifference is more than mere negligence." *Id*. (*citing Conner v. Travis County,* 209 F.3d 794, 796 (*citation omitted*)). A showing of deliberate indifference can be based on a single incident but will usually require a pattern especially for inadequate training. *Id*. (*citing Gabriel v. City of Plano,* 202 F.3d 741, 745 (5th Cir.2000), *Conner,* 209 F.3d at 797, and *Davis v. City of N. Richland Hills,* 406 F.3d 375, 383 n. 34 (5th Cir. 2005)). In order to rely on the "single incident exception" the

Plaintiffs must prove that the highly predictable consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the moving force behind the constitutional violation." *Davis* at 406 F.3d at 386 (citations omitted). One violation, "accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Bryan Cty.*, 520 U.S. at 409; *see also Alvarez v. City of Brownsville*, 904 F.3d 382, 390 (5th Cir. 2018). Although narrow, this exception generally applies where the facts giving rise to the violation are such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of the policy or custom. *Westfall v. Luna*, 903 F.3d 534, 554 (5th Cir. 2018). "The high degree of predictability may also support an inference of causation—that the municipality's indifference led directly to the very consequence that was so predictable." *Bryan Cty.*, 520 U.S. at 409–410.

    Given the numerous incidents of excessive force used in contradiction to the written policy and that the number of incidents was steadily growing over the years, the County and it's policymakers were aware that despite any written policies that may have existed, the policy of its officers, through custom or practice, was to use excessive force in constitutional violation of the individuals that the County and its officers are in charge of. Thus, whatever training and supervision was currently in place was grossly inadequate and policymakers failed to do anything to correct it, as the custom and policy

continues on and the number of violations by the County's officers continues to grow each year, implying that the County and it's policy makers have adopted this policy. Additionally, Plaintiff alleged a similar incident (other detainees who were subjected to assault by detention officers) mere days apart from Plaintiff. This further demonstrates the pervasiveness of the culture and policy of using excessive force.

## II.

### In the alternative, and only if this Court finds Plaintiff's claims deficient in any respect, Plaintiff seeks leave to amend his Complaint.

As noted in detail above, the Plaintiff has adequately pled sufficient claims against the County and, thus, the County's motion should be denied. However, if this Court believes the Complaint is in some way deficient, the Plaintiffs respectfully ask for leave to amend his complaint. "[L]eave to amend shall be freely given when justice so requires and should be granted absent some justification for refusal." *U.S. ex rel. Willard v. Humana Health Plan of Tex., Inc.*, 336 F.3d 375, 386 (5th Cir. 2003) (*citing* Fed. R. Civ. P. 15(a)). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). Thus, leave should be given unless the following factors weigh heavily against amendment: (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failures to cure deficiencies by prior amendment; (4) undue prejudice to the opposing party; and (5) the futility of

the amendment. *See U.S. ex rel. Hebert v. Dizney,* 295 Fed. Appx. 717, 724 (5th Cir. 2008). None of these factors are present here. Only one attempt at Amendment has occurred and it was to correct the name of the Defendant. Accordingly, if the Plaintiff's allegations are deficient in some respect, he asks that he be granted leave to amend his Complaint.

## VI.

WHEREFORE PREMISES CONSIDERED, Plaintiff prays that Defendant's Motion to Dismiss Plaintiff's Claims be DENIED or in the alternative that Plaintiff be granted leave to amend his complaint. Plaintiff also asks for any other relief that this court deems just and equitable under the law.

Respectfully Submitted

T.J. Solomon Law Group, PLLC

By: *Tanika J. Solomon*
Tanika J. Solomon
Texas Bar No. 24055713
Shantelle Jones
Texas Bar No. 24136932
S.D. Bar No. 3866430
Email: attorney@tjsololaw.com
　　　　shantelle@tjsololaw.com
2120 Welch Street
Houston, TX 77019
Tel. (713) 640-5956
Fax. (713) 640-5944
**ATTORNEYS FOR PLAINTIFF**

# CERTIFICATE OF SERVICE

I hereby certify that on this the 14th day of March 2024, I electronically served a copy of Plaintiff's *Response to Defendant Harris County's Motion to Dismiss* and this document has been served on all parties or their attorney(s) of record—who are listed below—in accordance with Fed. R. Civ. P. 5(b) as follows:

Via the Court's electronic filing notification system:

SUZANNE BRADLEY
Senior Assistant County Attorney
ATTORNEY-IN-CHARGE
State Bar No. 00793375
Fed. Bar No. 24567
Tel: (713) 274-5330 (direct)
Suzanne.Bradley@harriscountytx.gov
FRANK J. FORD
Assistant County Attorney
ATTORNEY TO BE NOTICED
State Bar No. 24012642
Fed. Bar No. 565385
Tel: (713) 274-5166 (direct)
frank.ford@harriscountytx.gov
OFFICE OF THE HARRIS COUNTY ATTORNEY
1019 Congress
Houston, Texas 77002

*Lanika J. Solomon*

Tanika J. Solomon